IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 29, 2012 Session

## TONY WILLIAMS ET AL. v. TENNESSEE FARMERS LIFE REASSURANCE COMPANY ET AL.

**Appeal from the Chancery Court for Giles County**
**No. 3837      Jim T. Hamilton, Judge**

_____

**No. M2011-01946-COA-R3-CV - Filed July 31, 2012**

_____

This action was filed after the defendant, a life insurance company, denied payment of benefits on the grounds that the decedent/insured made material misrepresentations in her application for life insurance. The specific basis for the denial was that the insured allegedly failed to disclose "methadone treatment for a narcotic addiction." The trial court found there was no proof that the insured was taking methadone at the time of the application or that she was ever treated for "drug related problems." On this basis, the trial court concluded the insured did not make any misrepresentations in her application for life insurance and ordered the defendant to pay the death benefit plus pre-judgment interest. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and RICHARD H. DINKINS, J., joined.

Robert B. Littleton, Nashville, Tennessee, for the appellants, Tennessee Farmers Life Reassurance Company and Mansel Smelser.

C. Tim Tisher, Columbia, Tennessee, for the appellees, Tony Williams and Angela N. Williams.

**OPINION**

This action arises from the denial of death benefits under a term life insurance policy issued by the defendant, Tennessee Farmers Life Reassurance Company ("Tennessee Farmers" or "Defendant"), to the decedent, Barbara Williams ("Ms. Williams"). The plaintiffs, Tony Williams and Angela Williams, the decedent's husband and daughter, respectively ("Plaintiffs") are the named beneficiaries under the policy of insurance.

Barbara Williams applied for a twenty-year $50,000 term life insurance policy with Tennessee Farmers on May 26, 2005.[1] The two-page "Part II Nonmedical"[2] portion of the application required Ms. Williams to list the name and address of her "personal physician," to provide a family history of medical issues, and to answer several yes or no questions about her own personal medical history. Ms. Williams completed the application with the assistance of her Tennessee Farmers insurance agent, Mansel Smelser. Ms. Williams responded "yes" to twelve of the questions on the application and Mr. Smelser then wrote a more detailed answer to each of these "yes" questions in a designated space. Ms. Williams identified numerous medical conditions including, *inter alia*, a nervous disorder, sleep disorder, arthritis, partial disability and lameness as a result of a motor vehicular accident, and a history of tuberculosis. She disclosed that she smoked a half-pack of cigarettes per day, and that she had a family history of cancer, tuberculosis, and suicide. She identified "Dr. George Labban, Pulaski, TN,"[3] as her "personal physician" and "Dr. Livingston, Primary Pain & Relief Center, State Street, Nashville, TN" as providing her with treatment for arthritis and lameness. She also stated that she was treated in the Maury County Regional Hospital following the vehicular accident. In response to the question "Are you now under observation or taking treatment or medication?" She answered, "Perquset [sic] for pain, Xanax for sleep [assistance]."[4] She also provided an oral swab for a drug screen and executed an open-ended medical release to enable Tennessee Farmers to review any of her medical records.

During the underwriting process over the next three months, Tennessee Farmers obtained medical records from Dr. Labban, Dr. Livingston, and Dr. Robert McClure, who performed a colonoscopy on Ms. Williams after the date of the application. In August 2005, Tennessee Farmers offered to issue a $50,000 term life insurance policy to Ms. Williams; however, due to actuarial risks arising from her medical history, Tennessee Farmers applied a substandard rating to the proposed policy, meaning Ms. Williams had to agree to pay a substantially higher premium to obtain coverage. She agreed and the $50,000 policy was issued "with an extra rate of 50% of the basic annual premium, due to medical reasons."

---

[1]Her husband, Mr. Williams, also applied for a policy at the same time.

[2]This section is completed by applicants who are not required to take a medical exam.

[3]His name is spelled Labban, Labben, and Labon at different places in the record. We will use "Dr. Labban" throughout this opinion.

[4]The word is illegible but it appears to be "assistance." This is consistent with her response to question 2.b., which asked "Have you ever been treated for or ever had any known indication of: . . . nervous disorder," to which she answered "yes," and Mr. Smelser wrote that Dr. Labban treated her for "sleep assistance."

In May 2006, nine months after the policy was issued, Ms. Williams died of acute methadone intoxication; she was 44 years old. Thereafter Mr. Williams submitted a claim on the life insurance policy. Tennessee Farmers responded to the claim by letter dated September 7, 2006, stating that the claim was contestable due to the fact that Ms. Williams died within two years of the issuance of the policy and that it was denying the claim because Ms. Williams failed to make certain disclosures and denied having certain medical conditions in the application. Tennessee Farmers also issued and mailed to Mr. Williams a full refund of the premiums paid prior to Ms. Williams' death.

On May 7, 2007, Plaintiffs filed this action against Tennessee Farmers and Mr. Smelser. In the complaint, Plaintiffs sought to enforce the insurance policy and recover the death benefit. They also sought to recover their attorney's fees and a twenty-five percent penalty in accordance with Tennessee Code Annotated § 56-7-105 on the grounds that Tennessee Farmers denied the claim in bad faith.

Following a bench trial, the trial court found in Plaintiffs' favor and ordered Tennessee Farmers to pay the death benefit of $50,000, plus pre-judgment interest at a rate of ten percent per annum from September 7, 2006, the date Tennessee Farmers issued the letter denying Plaintiffs' claim. Tennessee Farmers appealed; however, this court determined the trial court had not adjudicated Plaintiffs' claim for bad faith denial of benefits or for attorney's fees, and dismissed the appeal *sua sponte* for lack of a final judgment. *Williams v. Tennessee Farmers Life Reassurance Co.*, No. M2010-01689-COA-R3-CV, 2011 WL 1842893, *4-6 (Tenn. Ct. App. May 12, 2011) (hereafter, "*Williams I*"). The case was remanded with instructions for the trial court to resolve these issues. *Id.*

On remand, the trial court denied Plaintiffs' claim for a penalty and attorney fees under Tennessee Code Annotated § 56-7-105 based upon the finding that there was no proof of bad faith. Following this decision Tennessee Farmers renewed its appeal of the earlier decision; Plaintiffs do not appeal the denial of their bad faith penalty claim.

On appeal Tennessee Farmers contends the trial court erred in finding that the decedent's application for life insurance did not contain any misrepresentations; it further asserts that the decedent's misrepresentations increased its risk of loss for which coverage should be denied.

## STANDARD OF REVIEW

For purposes of this appeal, it must be noted that the truthfulness or falsity of a statement is a question of fact, *Morrison*, 338 S.W.3d at 428, and we review a trial court's findings of fact with the presumption they are correct unless the preponderance of the

evidence is otherwise. Tenn. R. App. P. 13(d); *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Id.*; *see also The Realty Shop, Inc. v. R.R. Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999). Whether false answers to an application for insurance "materially increased the risk of loss [is] a question of law," *Morrison*, 338 S.W.3d at 428 (quoting *Womack*, 593 S.W.2d at 295), and issues of law are reviewed de novo with no presumption of correctness. *Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999).

## ANALYSIS

An insurer may deny a claim for benefits if the insurer can demonstrate that a material misrepresentation was made in the application for insurance and that the misrepresentation was intentional or that the misrepresentation increased the insurer's risk of loss. *Morrison v. Allen*, 338 S.W.3d 417, 428 (Tenn. 2011); *Smith v. Tenn. Farmers Life Reassurance Co.*, 210 S.W.3d 584, 590 (Tenn. Ct. App. 2006); *Womack v. Blue Cross Blue Shield of Tenn.*, 593 S.W.2d 294, 295 (Tenn. 1980). This principle of law is codified at Tennessee Code Annotated § 56-7-103, which provides:

> No written or oral misrepresentation or warranty made in the negotiations of a contract or policy of insurance, or in the application for contract or policy of insurance, by the insured or in the insured's behalf, shall be deemed material or defeat or void the policy or prevent its attaching, *unless the misrepresentation or warranty is made with actual intent to deceive, or unless the matter represented increases the risk of loss.*

*Id.* (emphasis added).

Tennessee Code Annotated § 56-7-103 "generally favors the validity of insurance contracts," *Morrison*, 338 S.W.3d at 428; however, as the quoted section above reveals, it also provides that a "misrepresentation in an application for insurance may defeat the policy if it 'is made with actual intent to deceive' or 'the matter represented increases the risk of loss.'" *Id.* (quoting Tenn. Code Ann. § 56-7-103).

I.

Tennessee Farmers contends Ms. William made material misrepresentations in answering questions in the application, placing specific emphasis on the fact she did not affirmatively state that she had taken methadone in response to question 6.d. The question asked: "Have you ever: Been arrested and/or treated for any alcohol or drug related

problems?" She answered "No". Tennessee Farmers contends that the medical records it reviewed after Ms. Williams' death indicate that she was prescribed methadone as treatment for "drug related problems."[5]

Gloria L. Elliott, the Manager of the Underwriting Department at Farmers Life, testified the claim was denied due to "a history of narcotic addiction with treatment with methadone not admitted to" by Ms. Williams in the application. Ms. Elliott further stated that the failure to disclose methadone treatment, if prescribed for any reason, "absolutely" increases the company's risk of insuring a person, "because of deaths from the misuse of the drug[]," and that Tennessee Farmers has a policy against providing life insurance to any applicants with methadone treatment in their medical history. Ms. Elliott also stated Tennessee Farmers would not have issued the policy had they known of Ms. Williams' use of methadone for any reason.

We find the hard line taken by Tennessee Farmers as it pertains to methadone most intriguing because, notwithstanding how serious an underwriting risk Tennessee Farmers contends any use of methadone may be, Mrs. Williams was not asked if she had ever taken methadone. "Courts may use the questions an insurance company asks on its application to determine the types of conditions or circumstances that the insurance company considers relevant to its risk of loss." *Smith v. Tenn. Farmers Life Reassurance Co.*, 210 S.W.3d 584, 590 (Tenn. Ct. App. 2006) (citations omitted) (emphasis added).

Nevertheless, Tennessee Farmers asserts Ms. Williams made other misrepresentations in her application for insurance which had the effect of obscuring her history of methadone use, thus increasing Tennessee Farmers' risk of loss and, Tennessee Farmers argues, providing a proper basis for the denial of benefits. *See* Tenn. Code Ann. § 56-7-103. Specifically, Tennessee Farmers contends that Ms. Williams: 1) falsely denied that she was ever treated for "drug related problems," 2) failed to disclose that she had been diagnosed with depression and saw a psychiatrist, 3) failed to disclose that she received treatment at a second pain clinic in addition to the Primary Pain & Relief Center, and 4) failed to disclose that she had a second primary physician in addition to Dr. George Labban.

The trial court made substantial and specific findings of fact regarding the truthfulness and completeness of Ms. Williams' answers to the question on the application. Those findings relevant to the issues on appeal are as follows:

---

[5]Tennessee Farmers reasons that this "misrepresentation" increased its risk of loss because, had Ms. Williams checked "yes" in response to question 6.d., it would have then required Ms. Williams to complete a "Drug Questionnaire," which has a specific question regarding an applicant's past use of methadone.

The deceased, Barbara Williams, applied for a life insurance policy in the face amount of Fifty Thousand Dollars ($50,000.00) with Defendant, Tennessee Farmers Life Reassurance Company on May 26, 2005. Such application was filled out primarily by Defendant, Mansel Smelser. Such application stated that Barbara Williams was disabled, had a nervous disorder, had tuberculosis, had arthritis, had lameness, was injured in a car accident on September 19, 2002 which left her partially disabled and for which she was treated at Maury Regional Hospital, that she smoked one-half pack of cigarettes daily, that she took Percocet for pain and Xanax for sleep assistance, that she had a hysterectomy and that she had a family history of tuberculosis, cancer and suicide. Also, in said application, her primary treating physician's name and city were revealed as well as the name of a doctor and specific pain clinic where she was being treated.

In addition to the application, a saliva sample was taken from Ms. Williams and she executed an open-ended medical authorization entitling Tennessee Farmers Life Reassurance Company to obtain whatever medical records it deemed necessary and desired.

The oral fluid screen, Trial Exhibit 9, which was reviewed by Defendant, Tennessee Farmers Life Reassurance Company, prior to issuing the policy in question, was in fact the oral fluid screen of Plaintiff, Tony R. Williams, and not the deceased, Barbara Williams.

In addition, even though all the above-referenced information was disclosed on Barbara Williams' application, Defendant, Tennessee Farmers Life Reassurance Company only obtained approximately seven (7) months of records from her treating physician, approximately four (4) months of records from the pain clinic where she was being treated, and a couple of records concerning a colonoscopy which she had after the date of the application. They unexplainably did not obtain any records from Maury Regional Hospital concerning her car wreck which left her partially disabled.

Approximately three (3) months after the date of the application, on August 22, 2005, a policy in the face amount of Fifty Thousand Dollars ($50,000.00) was issued to Barbara L. Williams. Such policy was issued with an amendment in the form of a rated premium of an extra fifty percent (50%) due to medical reasons.

Barbara Williams died on May 7, 2006. An autopsy was performed and the cause of death was stated as acute methadone intoxication. Plaintiff then filed a claim to collect the death benefit from his wife's policy. At that time, Defendant, Tennessee Farmers Life Reassurance Company, obtained additional medical records including additional records from Ms. Williams' primary treating physician and the records from Maury Regional Hospital concerning her wreck in 2002. Included in the records obtained during the claim investigation were references to prior methadone treatment by Ms. Williams.

As a result, on September 7, 2005, Defendant, Tennessee Farmers Life Reassurance Company issued a letter denying the claim for benefits under the policy. The basis for such denial as stated in the denial letter and as testified to at trial was methadone treatment for a narcotic addiction.

However, there is no proof in the record that Barbara Williams was being treated with methadone for a narcotic addiction. There was proof that she suffered from chronic pain and that one of the major uses of methadone is to treat pain.

The applicable law in this case is Tennessee Code Annotated Section 56-7-103 which provides:

> No written or oral misrepresentation or warranty made in the negotiations of a contract or policy of insurance, or in the application for contract or policy of insurance, by the insured or in the insured's behalf, shall be deemed material or defeat or void the policy or prevent its attaching, unless the misrepresentation or warranty is made with actual intent to deceive, or unless the matter represented increases the risk of loss.

The Court specifically finds that Barbara Williams did not make any misrepresentations in her application. The first area questioned by the Defendants at trial is question number 4 which states, "Are you now under observation or taking treatment or medication?" The block was checked yes and in response to this question, Defendant, Mansel Smelser, wrote in the margin "Percocet for pain Xanax for sleep assistance". However, there is no proof whatsoever that Barbara Williams was taking methadone at the time of the application. In fact, the record shows that on May 4, 2005, just three (3)

weeks before the date of the application, she was given a drug screen by Dr. Livingston, Exhibit 11.

The next question relied on by Defendants is 6(d) which states, "Have you ever: Been arrested and/or treated for any alcohol or drug related problems?" The block in this column is checked No and there is no proof at all that Barbara Williams was ever treated for alcohol or drug related problems. In fact, the only proof in the record shows that Ms. Williams suffered from pain and that one of the primary uses of methadone is to treat pain.

The evidence in support of Tennessee Farmers' position that Ms. Williams had a history of drug abuse consists of: 1) a brief reference to an "*apparent* history of narcotic addiction" from the Maury County Regional Hospital Emergency Room Report relating to Ms. Williams' admission following her car accident in September 2002 (emphasis added); 2) a handwritten note in Dr. Labban's records on Ms. Williams which states, "Judy informed me this pt goes to the methadone clinic?"[6] and 3) Mr. Williams testimony that, "I tell you I don't understand methadone. I didn't know methadone was even a drug. I thought it was something to get you off the narcotics."

The above evidence, which is circumstantial, is countered by direct evidence that Ms. Williams had serious, chronic pain issues, and that one of the main uses for methadone is to treat pain. More importantly, the trial court made the specific finding of fact that "there is no proof in the record that Barbara Williams was being treated with methadone for a narcotic addiction." Whether Ms. Williams' answers to the questions on the application for life insurance are truthful or false is a question of fact and we review the trial court's findings of fact with the presumption they are correct unless the preponderance of the evidence is otherwise. *See Morrison*, 338 S.W.3d at 428, Tenn. R. App. P. 13(d). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect and we have concluded the evidence does not preponderate against the trial court's findings of fact.

II.

The remaining "material misrepresentations" Tennessee Farmers asserts are all instances where Ms. Williams allegedly failed to provide complete information regarding her medical history. Specifically, Tennessee Farmers asserts that the following facts about Ms.

---

[6]There are several additional references in Ms. Williams' medical records which state that she was treated with methadone; however, none of these contain any reference to the fact that the methadone was for "drug related problems."

Williams' medical history were not disclosed, which, it asserts, increased its risk of loss: 1) She was diagnosed with and treated for depression by a psychiatrist, Dr. Vanveen; 2) She was a patient at Griner's & Hobbs' pain clinic; and 3) She had a second primary physician, Dr. Charles Sidberry of the Lynnville Medical Clinic. Tennessee Farmers contends the first two facts should have been disclosed in response to catch-all questions 3.b. and 3.c.: "Other than above, have you within the past 5 years: . . . b. Had a checkup, consultation, illness, injury, surgery? c. Been a patient in a hospital, clinic, sanatorium, or other medical facility?" Tennessee Farmers also asserts Dr. Sidberry should have been disclosed as a second "personal physician" in addition to Dr. Labban in response to question 1.a., "Name and address of your personal physician (if none, so state)." As we understand it, Tennessee Farmers' position is as follows: Had Ms. Williams' complete medical history been listed, the Underwriting Department at Tennessee Farmers would have been more likely to discover Ms. Williams' history with methadone; thus, the failure to list Dr. Vanveen, Dr. Griner, and Dr. Sidberry increased its risk of loss.

An insured has a duty to make a "fair disclosure of the facts," meaning that "he or she must disclose information which is material to the risk involved." *Clingan v. Vulcan Life Ins. Co.*, 694 S.W.2d 327, 330 (Tenn. Ct. App. 1985). "Whether information not disclosed is material is a question of law for the court." *Id.* (citing *Collins v. Pioneer Title Ins. Co.*, 629 F.2d 429 (6th Cir. 1980)). It must "be of that character which the court can say would reasonably affect the insurer's judgment." *Vermont Mut. Ins. v. Chiu*, 21 S.W.3d 232, 235 (Tenn. Ct. App. 2000).

To determine whether the information that Ms. Williams failed to disclose – diagnosis of depression, Dr. Vanveen, Griner's & Hobbs' Pain Clinic, and Dr. Sidberry – is "material to the risk involved" in this case, we will first consider the risk as alleged by Tennessee Farmers and then consider how the undisclosed information relates to that risk.

Ms. Gloria Elliott testified that the basis for denying Ms. Williams' claim was "a history of narcotic addiction, treatment with methadone, and then [Ms. Williams' death] within two years of . . . the application." She went on to testify that "any time someone is under treatment with a narcotic, even prescription from a doctor, that's concerning to us." Ms. Elliott further stated, "[w]e would not have taken the case had we known that. . . . Because of deaths from the misuse of the drugs." Thus, the increased risk associated with the use of narcotics, including methadone, is the issue.

Tennessee Farmers contends the failure to disclose Dr. Vanveen and Dr. Griner increased its risk because it did not know to review their medical records. We, however, find this of no consequence because there is nothing in the record on appeal of any reference to methadone use by Ms. Williams in Dr. Vanveen's records, who treated Ms. Williams for

-9-

depression, or Dr. Griner's records, who treated Ms. Williams at Griner's & Hobbs' Pain Clinic. Thus, Ms. Williams' failure to identify Dr. Vanveen or Dr. Griner and his clinic is not "material to the risk involved" in this case. *See Clingan*, 694 S.W.2d at 330.

Ms. Williams did not identify Dr. Sidberry as a second "personal physician" in response to question 1.a. and Ms. Williams' medical records on file with Dr. Sidberry contain two references to methadone. However, when this fact is considered in light of the information Ms. Williams *did* disclose in her application, the failure to disclose Dr. Sidberry is also not "material to the risk involved" in this case. This is because Ms. Williams presented herself to Tennessee Farmers as an applicant with several serious medical issues, including chronic pain, anxiety, and sleeping problems, which required treatment with narcotic drugs, Xanax and Percocet,[7] and Tennessee Farmers considered Ms. Williams an increased risk to insure, as evidenced by the fact that Tennessee Farmers only agreed to issue Ms. Williams a policy rated with fifty percent higher premiums than the standard policy. Furthermore, Tennessee Farmers presented no proof concerning how the failure to disclose Dr. Sidberry increased its risk when Ms. Williams' prior use of methadone was detailed in the records of Dr. Labban and the Maury County Regional Hospital. Dr. Sidberry's records do not reveal anything related to methadone which is not revealed, indeed more thoroughly, in Dr. Labban's records and in the records of Maury County Regional Hospital. *Cf. Clingan*, 694 S.W.2d at 327-330 (finding that a failure to disclose a surgical procedure in an application for health insurance materially increases the insurer's risk where the procedure was not listed in any of the records available to the insurer at the time of the application); *Montgomery v. Reserve Life Ins. Co.*, 585 S.W.2d 620, 620-23 (Tenn. Ct. App. 1979) (finding a material misrepresentation where life insurance applicant denied having received treatment from "any physician or other practitioner" but had a history of "extensive and repeated hospitalization for psychiatric treatment" not included in any of the applicant's medical records). In other words, the inclusion of Dr. Sidberry on the application would not have provided any information not already available to Tennessee Farmers. Finally, we note that question 1.a. only asked Ms. Williams to identify her "personal physician" which is a singular term. Although Dr. Sidberry was one of Ms. Williams' physicians, the record in this case suggests that Ms. Williams considered Dr.Labban to be her "personal physician."

---

[7]According to the U.S. National Library of Medicine, Xanax is a brand name for alprazolam, which is used to treat anxiety disorders and panic disorder (sudden, unexpected attacks of extreme fear and worry about these attacks). It is in a class of medications called benzodiazepines. Percocet contains a combination of oxycodone and acetaminophen. Oxycodone is in a group of drugs called opioid pain relievers. An opioid is sometimes called a narcotic. Acetaminophen is a less potent pain reliever that increases the effects of oxycodone. *See Drug Information from the National Library of Medicine, Drug Information Portal*, http://www.nlm.nih.gov/learn-about-drugs.html (last visited July 15, 2012).

As discussed earlier, Ms. Williams was never asked if she had ever taken methadone. As for narcotics, she expressly identified two narcotics she was taking at the time she completed the application. Further, she disclosed two medical providers, Dr. Labban and Maury County Regional Hospital, whose medical records contain several references to Ms. Williams' history with methadone and other narcotics. The fact that Tennessee Farmers failed to review Dr. Labban's records further back than seven months, and failed to review Maury County Regional Hospital's records at all prior to issuing the rated policy does not constitute a misrepresentation by Ms. Williams.

Based upon the foregoing and the record as a whole, we find Ms. Williams made a "fair disclosure of the facts" in this case, that is, she reasonably disclosed all of the information requested of her that is "material to the risk involved," namely, her history of methadone use and current use of narcotic prescription drugs. *See Clingan*, 694 S.W.2d at 330.

## IN CONCLUSION

We affirm the trial court's finding that Ms. Williams did not make material misrepresentations in her application for life insurance, therefore, the policy is enforceable and Plaintiffs are entitled to the death benefits under the policy, plus pre-judgment interest calculated in accordance with Tennessee Code Annotated § 56-7-315. Therefore, the judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against Defendant Tennessee Farmers Reassurance Company.

_____
FRANK G. CLEMENT, JR., JUDGE